# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Christopher Harris (#A-93039), | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No: 11 C 50385 |
| | ) | |
| Officer Hammil, et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendant Dr. Wahl's motion for summary judgment [102] is granted. Dr. Wahl is dismissed as a defendant. Plaintiff's motions to supplement his response to the motion [129] [140] [141] [147] are granted. The plaintiff's motions to strike the motion for summary judgment [128] [139] and the affidavit of Gina Allen [144] are denied.

## STATEMENT

The plaintiff, an Illinois state prisoner, has brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials and medical providers at Dixon Correctional Center, have violated his rights by being deliberately indifferent to a serious medical condition. More specifically, the plaintiff alleges that he suffers from a seizure disorder and was consequently issued a low bunk permit. The plaintiff further alleges that on May 31, 2011, defendant Hammil refused to enforce the plaintiff's low bunk permit, requiring the plaintiff to sleep in a top bunk. The plaintiff alleges that he fell out of the top bunk and suffered injury to his head and back and that defendant Heeley denied him transfer to the health care unit. The plaintiff alleges that defendant Schott failed to transfer him to another cell where he could have access to a lower bunk. With respect to the remaining defendants, Chandler, Dusing, Barnhardt, Berkeley, Wahl, Allen, and Godinez, the plaintiff alleges that although he notified them of his serious medical condition, and the poor treatment he received, they did nothing to rectify the situation.

This matter is before the Court for ruling on defendant Wahl's (hereinafter, "the defendant" or "defendant Wahl") motion for summary judgment for failure to exhaust administrative remedies, and the plaintiff's motion to strike the motion for summary judgment, responsive motions to supplement the record with additional evidence, and motion to strike the affidavit of Defendant Gina Allen. For the reasons contained in this order, the plaintiff's motions to supplement are granted, his motions to strike are denied, and the defendant's motion for summary judgment for failure to exhaust administrative remedies is granted.

## LEGAL STANDARD

A party is entitled to summary judgment if all the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the non-moving party. Abdullahi v. City of Madison, 423 F.3d 763, 773 (7th Cir. 2005). Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Winsley v. Cook Cnty., 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pugh v. City of Attica, Indiana, 259 F.3d 619, 625 (7th Cir. 2001).

Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. See Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); Greer v. Board of Educ. of the City of Chicago, 267 F.3d 723, 729 (7th Cir. 2001). Instead, the party that bears the burden of proof on an issue must affirmatively demonstrate, with admissible evidence that a genuine issue of material fact exists that requires a trial. See Hemsworth, 476 F.3d at 490.

When Defendant filed her motion for summary judgment, she included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Timms v. Frank, 953 F.2d 281, 285 (7th Cir. 1992); Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982); and Local Rule 56.2. This notice clearly set out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that the plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1.

Local Rule 56.1(b)(3) requires a party opposing a motion for summary judgment to file:

> (A)    a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>
> (B)    a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1, even though the plaintiff is proceeding pro se. See Ammons v. Aramark Uniform Serv., Inc., 368 F.3d 809, 817 (7th Cir. 2004); Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d 524, 527 (7th Cir 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process).

Although pro se plaintiffs are entitled to lenient standards, compliance with procedural rules is required. Members v. Paige, 140 F.3d 699, 702 (7th Cir. 1998) ("rules apply to uncounseled litigants and must be enforced"); Jones v. Phipps, 39 F.3d 158, 163 (7th Cir. 1994). Despite being given this notice, the plaintiff failed to properly respond to Defendant's Rule 56.1 statement of facts. While the plaintiff did submit a response, it does not directly address each of the defendant's

statements of fact, nor does it create a question of fact as to the statements of facts submitted by the defendant. Instead, the plaintiff's responses are argumentative, for example, plaintiff alleges that the defendant's statement of fact #2 is fraudulent because an alleged error in the filing date of the complaint (Defendant states the complaint was filed on December 27, 2011, which is supported by ECF, and the plaintiff insists it was filed on December 28, 2011, as amended with the names of all of the defendants included.) See ECF #112, p. 2 response to 3. The plaintiff focuses much of his narrative response on arguing that the defendant's statements of fact are misleading or fraudulent, focusing on his substantive claim and his illness(es), not on the core question of the motion which is whether the plaintiff exhausted his administrative remedies prior to filing suit. As such the plaintiff's "responses" are actually non-responsive.

Additionally, while the plaintiff makes references to exhibits, they are unclear, and he did not attach exhibits to the response. The references do not seem to correlate the exhibits attached to the defendant's Rule 56.1 statements of fact or any exhibits the Court can readily identify. As such, the plaintiff's response is not in compliance with L.R. 56.1 (N.D. Ill.); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

The Seventh Circuit has "routinely held that a district court may strictly enforce compliance with its local rules regarding summary judgment motions." Yancick v. Hanna Steel Corp, Case No., No. 10 C 1368, 2011 U.S. App. LEXIS 15896 **7-8 (7th Cir. August 3, 2011); citing Schmidt v. Eagle Waste & Recycling, Inc., 599 F.3d 626, 630 (7th Cir. 2010). Accordingly, as the plaintiff has failed to properly respond to the defendant's statement of facts, they are deemed admitted.

However, the plaintiff has submitted multiple motions to supplement his response to the motion for summary judgment and the Court grants those motions. Because Plaintiff is proceeding pro se, the Court will construe his filings broadly and consider factual assertions he makes in his summary judgment materials to the extent that he could properly testify about the matters asserted based on his personal knowledge. Fed. R. Evid. 602.

## FACTS

Plaintiff Christopher Harris is an inmate at Dixon Correctional Center (hereinafter "DCC"). This Section 1983 medical deliberate indifference action was filed by the plaintiff against Dr. Jill Wahl and various other employees of the IDOC and the DCC healthcare staff. The plaintiff filed this action on December 27, 2011, based on the claims that (1) various members of the prison staff were deliberately indifferent to Plaintiff's alleged seizure condition by failing to honor a bottom-bunk permit, and (2) various members of the DCC medical staff were deliberately indifferent in the treatment of the plaintiff's alleged back and head pain allegedly caused by a fall he suffered after a seizure.

Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons. Generally, an inmate must attempt to resolve grievances through his counselor. If the grieved issue remains unresolved after such informal efforts, or for example, involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer ("CAO"). The grievances must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. Grievances must be submitted to the facility Grievance

3

Officer within sixty days after the discovery of the incident, occurrence, or problem that gives rise to the grievance.

The Grievance Officer may personally interview the inmate and/or other witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the Grievance Officer's conclusions and, if appropriate, any recommended relief is forwarded to the CAO. The CAO, or CAO's designee's, decision is then submitted to the grieving inmate.

If, after receiving the CAO's decision the inmate feels the issue is unresolved, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision within thirty days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents and at the ARB's discretion, calling witnesses.

The ARB submits a written report of its findings and recommendations to the Director or Director's designee who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB's filed. Department Rule 504F: Grievance Procedures for Committed Person provides no further means for review beyond this step.

Certain issues may be grieved directly to the ARB, rather than first through a counselor of Grievance Officer. These issues include:

a. Decisions involving the involuntary administration of psychotropic medication;

b. Decisions regarding protective custody placement, including continued placement in or release from protective custody; Decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and,

c. Other issued except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned.

These grievances are then handled in accordance with the procedures described above.

An inmate may request a grievance be handled on an emergency basis by forwarding the grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedure described above.

The grievance procedure set forth above must be utilized for complaints regarding an inmate's medical care and treatment provided at IDOC facilities as such is within the Department's authority. Indeed, the mandatory Offender's Grievance form includes a box at the top of the form for inmates to

check when the grievance involves medical care.

In order for the ARB office to process and consider an inmate's grievance appeal as required under Section 504.850(b), the inmate must submit the Committed Person's Grievance Report, DOC 0047, including the Grievance Officer's and CAO's response, and Committed Person's Grievance, DOC 0046, including the counselor's response. The ARB, as the Director's designee, then reviews the grievance and the responses of the Grievance Officer and CAO to determine whether the inmate has followed the proper grievance procedure at the prison where he is incarcerated prior to submitting the grievance to the ARB. If, for example, the inmate submitted the grievance to the ARB without first obtaining a procedurally required response from the counselor, Grievance Officer, or CAO, then the grievance form is returned to the inmate along with another form noting the procedural deficit.

If the inmate followed the proper grievance procedure at the prison where he is incarcerated prior to submitting the grievance to the ARB, the ARB may consider the appeal and submit a written report of its findings and recommendations to the Director, or to the Director's designee, who then reviews the report and makes a final determination on the grievance. Only after the Director makes a final determination with respect to the grievance is the inmate's administrative remedy fully exhausted insofar as Department Rule 504F provides no further means for review beyond this step.

Gina Allen is a Chairperson with the Administrative Review Board (the "ARB") of the Office of Inmate Issues for the Illinois Department of Corrections ("the Department"). She searched the ARB records regarding the plaintiff. The only grievance that the plaintiff submitted concerning his seizure and fall from the top bunk in his cell is dated June 9, 2010.

In the grievance, the plaintiff states that Corrections Officer Hammil failed to enforce the plaintiff's bottom-bunk permit. The plaintiff further states that on the night of May 31, 2011, he suffered seizures while sleeping in the top bunk of his cell and fell out of the bunk, hurting his back and his head. The plaintiff also complains that he was then seen by Nurse Heeley, who told Plaintiff to ice his head and back, but refused to send Plaintiff to the Health Care Unit.

Counselor Grafton responded to the grievance on June 30, 2011 by sending the grievance directly to the plaintiff's Grievance Officer. Grievance Officer Chris Barnhart responded on July 12, 2011, determining that the complaint detailed in the grievance had been addressed and did not require further action. Chief Administrator Nedra Chandler signed Grievance Officer Chris Barnhart's response on July 14, 2011. The plaintiff then appealed the grievance to the Administrative Review Board on July 20, 2011. On November 15, 2011, Illinois Department of Corrections Administrative Review Board Chairperson Gina Allen reviewed the Plaintiff's appeal of the grievance and determined that the issues set forth in the grievance were appropriately addressed by the institutional administration.

The grievance does not pertain to medical treatment rendered by Dr. Jill Wahl. Plaintiff's medical records indicate that following his alleged fall on May 31, 2011, Plaintiff did not see Dr. Wahl for treatment of any kind until August 9, 2011. Prior to filing the instant lawsuit on December 27, 2011, Plaintiff did not file a grievance complaining about any ongoing inability to obtain adequate medical care, nor did he complain regarding any medical issues regarding care provided by the defendant.

**ANALYSIS**

The defendant, Dr. Jill Wahl, argues that she is entitled to summary judgment for multiple reasons, relating to the plaintiff's failure to fully exhaust his administrative remedies. Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all detainee suits seeking redress for jail circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. See Porter v. Nussle, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to jail conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. See Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532 (7th Cir. 1999).

A detainee must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023 24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a detainee's attempt to exhaust available administrative remedies in the midst of litigation is insufficient. See Ford, 362 F.3d at 398; Perez, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a) a detainee or prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025; see also Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give corrections officials the opportunity to address complaints internally before a federal suit is initiated. See Porter, 534 U.S. at 524-25.

Here, Plaintiff filed a grievance on June 9, 2011, regarding his May 31, 2011, fall from the top bunk in his cell. In that grievance he made two complaints: (1) Defendant Hammil was deliberately indifferent to his need for a low bunk permit, resulting in the plaintiff having to sleep in a top bunk, falling out of bed due to a seizure, and injuring himself; and (2) Nurse Heeley (later identified as Nurse Berkeley) denied him access to the Health Care Unit for treatment for the injuries he sustained in the fall to his head and back, instead giving him an ice pack. The plaintiff was not allowed to go to the Health Care Unit until the following day, when he was given prescriptions for Baclofen and Ibuprofen.

The defendant argues in her motion that the plaintiff failed to exhaust his administrative remedies because he did not name her in the grievance. The Seventh Circuit has held that despite the administrative rule requiring a prisoner to name persons involved in the complaint, a prisoner has exhausted so long as the grievance places the state on notice of the need for corrective action. Maddox v. Love, 655 F.3d 709, 721 (7th Cir. 2011); see also Young v. Wexford Health Sources, No. 10 C 8220, 2012 U.S. Dist. LEXIS 17416 at **25-27 (N.D. Ill. February 14, 2102) (Pallmeyer, J.).

The court has held that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." Maddox, 655 F.3d at 722 (citing Conyers v. Abitz, 416 F.3d 580, 585 (7th Cir. 2005); Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004); Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004)). Significantly, the court pointed out that "providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement." Id. (citing Jones v. Bock, 549 U.S. 199, 219 (2007); Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004)).

The same legal principle applies with respect to the defendant's argument that because the

6

plaintiff checked the "staff conduct" box, rather than the one marked "medical treatment," he failed to exhaust. The evidence in the record evaluated under controlling Seventh Circuit case law forecloses the defendant's arguments regarding exhaustion for failure to check the right box or to name the defendant in the grievance.

However, the substance of the grievance is specific to two correctional/medical personnel, and to a discreet set of events occurring between May 31, 2011 and June 1, 2011. The plaintiff does not grieve any ongoing deficiency or delay in receiving medical care, and the defendant, Dr. Wahl, did not treat the plaintiff until August 9, 2011, after the plaintiff had received a response to his grievance from the grievance officer. Accordingly, the plaintiff failed to alert the state and invite corrective action with respect to any deliberate indifference to a serious medical condition. As such, the evidence is clear that the plaintiff failed to exhaust his administrative remedies as to any possible claim against the defendant, and she must be dismissed as a defendant. Furthermore, because it is now too late for the plaintiff to avail himself of grievance procedures, dismissal is with prejudice. See, e.g., Pozo, 286 F.3d at 1023-24; Walker v. Thompson, 288 F.3d 1005, 1009 (7th Cir. 2002); Hope v. Velasco, No. 01 C 1574, 2004 WL 417198, *4 (N.D. Ill. Feb. 23, 2004) (Hibbler, J.). The plaintiff has also submitted a motion to strike the affidavit of Gina Allen, asserting that it was submitted in bad faith. However, the Court has determined, based on the record, that the plaintiff has exhausted the claims on which he submitted a grievance, he just failed to grieve at all regarding any alleged ongoing deliberate indifference. Because the Court did not rely on the information contained in Ms. Allen's affidavit in deciding that the plaintiff failed to exhaust, the motion to strike is denied.

The plaintiff's motion to strike the defendant's motion for summary judgment merely contains additional argument regarding the plaintiff's technical compliance with the IDOC's grievance procedures. The Court has found that the grievance submitted on June 9, 2011, complied with the requirements with respect to the events occurring on May 31, 2011 and June 1, 2011. Consequently, the motion to strike is denied as duplicative of argument made in the plaintiff's various responses, and not material to the decision made by the Court.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted. Dr. Jill Wahl is dismissed as a defendant. The plaintiff's motions to supplement his response to the motion are granted. The plaintiff's motions to strike the motion for summary judgment and the affidavit of Gina Allen are denied.

Date: 9/30/2013

ENTER:

_____

FREDERICK J. KAPALA

District Judge